(No. 33836.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEE MAGNAFICHI, Plaintiff in Error.

*Opinion filed September 25, 1956.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and AUGUST B. BLACK, State's Attorney, of Morris, (FRED G. LEACH, and EDWIN A. STRUGALA, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

After a jury trial in the circuit court of Grundy County the defendant, Lee Magnafichi, was found guilty of burglary and sentenced to a term of not less than 15 nor more than 30 years in the penitentiary.

On this writ of error, he contends that the State failed to prove him guilty beyond a reasonable doubt and that the trial court made erroneous rulings.

The defendant was charged with burglarizing the Veterans of Foreign Wars club rooms in Morris on May 23, 1953. The prosecution rests upon the testimony of four people who were at the club while the alleged burglary was committed (Bernard Wardinski, Kenneth Johnson, Mrs. Kenneth Johnson, and Calvin Westphal,) and three others who testified to circumstances said to be related to the crime (Frank Hanson, Arthur Olson, and Austin Gaylord).

Bernard Wardinski said he opened the club on May 23, 1953, at around 12:10 P.M., and shortly after 12:30 P.M. was there with Mr. and Mrs. Kenneth Johnson. At that time a stranger walked in, pulled a revolver, told the three to "freeze," cautioned Mrs. Johnson to sit still and ordered Johnson to "hit the floor." Afterward, he began directing them to the men's wash room, and as he was doing so two other strangers entered, one through the front door and the other from the rear. As one of the men opened the wash room door to check on the parties, Wardinski saw another of them going through the cash register. And while he was confined in the wash room he heard a noise outside that sounded like the tail gate on a big truck being dropped or the dragging of chains. Calvin Westphal, an-

other member of the V.F.W. club, arrived while the burglars were still there, and he too was put in the wash room. One of the men asked Wardinski to open the safe, and after the latter said he did not know the combination, he was locked in the boiler room. He remained there until after the burglars had gone. He discovered that about $150 had been taken from the cash register.

Wardinski testified at a preliminary hearing before a justice of the peace, at which the defendant was also present. But he was unable to identify the defendant as one of the men involved in the burglary.

Kenneth Johnson's testimony was substantially the same as that of Wardinski, and he was also unable to identify the defendant as one of the burglars.

Mrs. Johnson corroborated the other two witnesses, and she too was unable to identify the defendant as one of the three.

Calvin Westphal arrived at the V.F.W. while the burglars were still there, after parking his car with the keys in it in front of the club. One of the men asked him for the keys to his car and Westphal said they were in it. Then he was ordered to the wash room with the others. A short time later Westphal heard the front door slam and he immediately ran to the front. He saw that his own car was gone and noticed a blue Oldsmobile parked across the streeet. He also observed a dark scrape mark on the sidewalk next to the building. This witness likewise was unable to identify the defendant as one of the burglars.

These four were the only eyewitnesses to the burglary, and none of them connected the defendant with the crime.

The State also called Frank Hanson who said that he did see the defendant at around 1:00 P.M. on the day in question, standing on the sidewalk about one-half block from the club rooms. As he watched, a blue Oldsmobile drove up and the defendant got in.

Arthur Olson, the chief of police, testified that he went

to the club rooms at about 1:00 P.M. and interviewed Wardinski, Westphal, and Mr. and Mrs. Johnson. He checked on the blue Oldsmobile parked across the street and found that the universal joint at the end of the drive shaft was broken and the shaft was hanging to the ground. He also found fresh scrape marks in the alley adjacent to the club. He had the car towed to the police station, and that same night the defendant came with a tow truck to pick it up. When asked about the car, the defendant said it belonged to his sister, that he had borrowed it, and that it had broken down in Morris. The police found a zipper bag in the car which contained several pairs of pliers, screwdrivers, a hammer, and a crescent wrench. Over the objections of defendant, these items were introduced in evidence.

In an attempt to link the defendant with the crime, the State called Austin Gaylord, who was the proprietor of a hardware store across from the club. At some time between 12:30 and 1:00 P.M. on the day of the burglary, he saw a blue Oldsmobile drive up to the alley adjacent to the club and saw two men get out of the car, go toward the club building, and "apparently enter." He then saw another man get out of the car, after which he heard a scraping noise and a "little thud." A short while after that, the two men returned and started to get in the car. But the car would not start, so the three of them pushed it. They pushed it out on the street, and then turned the wheels and brought it into a parking zone in front of Gaylord's store. After transferring things within the car, they walked around it and "back and forth," locked the doors and trunk, and walked across and up the street. The witness said the defendant looked like one of the three men.

The defendant offered no evidence on his own behalf.

As appears from the foregoing summary, the State's case is based entirely upon circumstantial evidence, and for the most part rests upon the testimony of Austin Gaylord.

To justify a conviction, circumstantial evidence must be of such a nature as to produce a reasonable and moral certainty that the accused committed the crime. Where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a serious and grave doubt of guilt, a conviction cannot stand. *People* v. *Taylor,* 410 Ill. 469; *People* v. *Widmayer,* 402 Ill. 143; 15 I.L.P., Criminal Law, sec. 912.

This record is almost totally lacking in any probative evidence of guilt. In the first place, the four eyewitnesses did not identify the defendant as one of the burglars. Moreover, the only circumstantial evidence that links him in any way to the burglary was Gaylord's testimony, which was neither strong by itself nor consistent with other facts of record.

Gaylord was unable to state definitely that the two men entered the club. He said they went toward the building and "apparently entered." He never noticed the third man, who he said looked like the defendant, walk toward or enter the club. Gaylord's version was that the two men returned to the car, and then the three of them spent time in pushing it, arranging its contents, walking back and forth, and locking the car doors and trunk before they walked away. However, the other witnesses speak of three men committing the burglary and of hearing the scraping noise (presumably caused by the broken shaft) during the course of the burglary. And Westphal, who ran to the front door immediately after the burglars departed, said his own car was missing and the burglars were not around. It is impossible to reconcile the testimony of Westphal with that of Gaylord.

Assuming that the two men who got out of defendant's car, as related by Gaylord, were indeed the burglars, and that they burglarized the club knowing the car was disabled, it would be very unlikely that they would walk back from the club after the burglary and do those time consum-

ing things which the witness speaks of. And this hypothesis is rendered all the more untenable by the testimony of Westphal that he rushed to the front door after he heard the door slam but did not see the burglars. During this brief interval the three men would scarcely have had time to do those things which Gaylord said they did. Or if we assume, on the contrary, that the parking of the car was all done before the burglary and that the three men, after parking the car, walked across the street and then burglarized the club, we are faced with conflicts in Gaylord's testimony and are confronted by the testimony of Wardinski and Mr. and Mrs. Johnson who said they heard the thumping and scraping sound, (apparently the drive shaft hitting the ground,) while they were in the wash room and the burglary was in progress.

The State seems to contend, in its brief, that it was for the defendant to explain his presence in Morris at the time of the crime, and his failure to give an account of himself and to produce as witnesses his two alleged companions establishes his guilt. But no rule is more firmly settled than that a defendant in a criminal case is not bound to prove himself innocent, but the State must prove him guilty beyond a reasonable doubt, the defendant being presumed innocent. An accused is entitled to rely upon this presumption, and if the evidence of the State fails to establish guilt, as we believe it fails to do in this case, the defendant need not introduce any evidence.

Since the State failed to establish the guilt of the defendant, the judgment of conviction must be reversed, and it is not necessary that we consider the other assignments of error. Moreover, since it does not appear that there are witnesses available other than those who have already testified, the cause will not be remanded for a new trial. *People* v. *Sheppard,* 402 Ill. 347; *People* v. *Bradley,* 375 Ill. 182.

*Judgment reversed.*