(No. 34527.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEO GUARDINO, Plaintiff in Error.

*Opinion filed January 24, 1958.*

CHARLES A. BELLOWS, and JASON ERNEST BELLOWS, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General of Springfield, and WILLIAM L. GUILD, State's Attorney, of Wheaton, (FRED G. LEACH, WILLIAM H. SOUTH, and ERVIN F. WILSON, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Leo Guardino, was convicted of the crime of burglary after a jury trial in the circuit court of Du Page County and was sentenced to imprisonment in the penitentiary for a term or not less than six nor more than ten years. Upon writ of error he now contends that he was not proved guilty beyond a reasonable doubt, and that the trial court erred in the admission of certain evidence.

On the evening of July 29, 1956, the Elmhurst home of J. Edward Kostur was forcibly entered in his absence and various items of furniture and other personal property were stolen by the occupants of a green Oldsmobile automobile who, in fleeing from pursuing police, scattered the loot along their escape route. Although there is no doubt a crime was committed, the evidence is vague as to the identity of the guilty persons and as to the defendant's complicity.

The People's principal witness in such regard was Mrs. Fred Leemhuis, who resided a short distance from the

Kostur home. She testified she first saw defendant on July 24, 1956, when he stopped at her house in the company of two other men and inquired if a family named Steiners lived there. When she replied in the negative the men entered a red Buick and drove away. According to her testimony defendant returned to her home at approxi- 6:00 P.M. on the evening of the crime and inquired as to whether she knew of anyone who had a Cadillac for sale. Again she replied in the negative, whereupon defendant left in a green Oldsmobile with two other men. Because she was alone and suspicious of defendant's intentions, the witness noted the license number of the green Oldsomobile on a piece of paper and telephoned the sheriff. Some ten minutes later two deputies arrived at her home, conversed with her for a short time and were about to leave when they observed a green Oldsmobile drive past. Its trunk was open and contained furniture and other items. Although Mrs. Leemhuis was unable to identify the occupants of the car on this occasion, she did testify it was the same green Oldsmobile in which defendant had left her home a short time earlier.

Robert L. Howard, one of the deputies who came to the Leemhuis residence, told of arriving there at 6:10 P.M. and stated that while engaged in a conversation with Mrs. Leemhuis at the front steps, they observed a green Oldsmobile with a trunk full of furniture coming from the direction of the Kostur residence. He told of pursuing the car and how it eluded them after a chase for several blocks at high speeds, during which various items of furniture, later identified as coming from the Kostur home, either fell or were thrown from the fleeing car. The witness was able to ascertain that there were three men in the vehicle being pursued but did not otherwise identify or describe them.

The other deputy, Edward L. Johnson, substantiated his partner's account of the call to the Leemhuis residence

and subsequent pursuit of a vehicle. He, however, stated that the car which passed the Leemhuis residence was a "1953 two-tone green Oldsmobile" and in describing the reaction of Mrs. Leemhuis he said: "Mrs. Leemhuis at that time brought out the fact that the Oldsmobile looked very similar and identified it at the time as tentatively the same one that was in her driveway a short time before she called us." This witness also noted three men in the fleeing Oldsmobile but stated he could not identify them.

Further evidence for the prosecution established that a 1956 automobile license, the number of which corresponded to the one written down by Mrs. Leemhuis, had been issued to defendant for a 1954 Oldsmobile, hard-top convertible, and Stanley Lange, also a deputy sheriff, told of arresting defendant at the latter's home on September 21, 1956, nearly two months after the burglary. Although Lange testified defendant denied any knowledge of the Kostur burglary, he also testified defendant admitted knowing the reason for which he was taken into custody.

Defendant's defense was an alibi which placed him in the company of his wife, Marion Easterday and Lester Belgrad at the time of the alleged crime. He admitted ownership of a 1954 green Oldsmobile but denied either visiting the Leemhuis residence at any time, or participating in the Kostur burglary. According to his account, Belgrad's fiancee, Marion Easterday, stayed at defendant's home on the night of July 28, 1956, and remained there until noon the following day, at which time Belgrad came in his automobile and took his fiancee, the defendant and defendant's wife to Belgrad's home where they continued in each other's company until approximately 10:00 P.M. Defendant's automobile, in the meantime, was left in the driveway of his home and purportedly was not moved until the following morning. This account was corroborated in all respects by the testimony of Belgrad, Marion Easterday and the defendant's wife. In rebuttal the People

introduced for purposes of impeachment a certified copy of a court record showing defendant's prior conviction on a charge of burglary.

As may be seen from the facts summarized, the case against the defendant is based entirely upon circumstantial evidence. No one saw him commit the crime; no person identified him as one of the fleeing culprits; and no stolen goods or burglar tools were found in his possession. The only incriminating factors are defendant's presence in the area immediately prior to the crime, a fact which does not alone establish guilt, (see: *People* v. *Magnafichi,* 9 Ill.2d 169,) and his ownership of an automobile similar to the one which drove away from the scene of the crime. Defendant's guilt, therefore, must necessarily depend on the evidence which links his car with the one employed by the burglars. Even without considering the deceptive similarities in modern day cars which makes positive identification difficult, we find the linking evidence to be far from satisfactory.

Deputy Johnson, a patrol officer who could be expected to have more than a passing familiarity with car models, testified the burglar's vehicle was a green 1953 Oldsmobile, yet the documentary evidence established defendant's car was a 1954 Oldsmobile. Mrs. Leemhuis, who had only momentary observation in both instances, testified at the trial that the burglar's car and the one in which defendant drove away from her house were one and the same, yet Johnson's description of her immediate reaction on the date of the crime was that the two cars "looked very similar" and that her identification was "tentative." It is true Mrs. Leemhuis obtained a license number which was traced to the defendant but there is no evidence which connects that number to the vehicle employed in the burglary. In short the only positive link in the evidence is that the burglars drove a green Oldsmobile and that defendant owned an Oldsmobile of the same general color. To justify a con-

viction, circumstantial evidence must be of such a nature as to produce a reasonable and moral certainty that the accused committed the crime and where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a grave and serious doubt of guilt, a conviction cannot stand. (*People* v. *Magnafiichi,* 9 Ill.2d 169; *People* v. *Taylor,* 410 Ill. 469; *People* v. *Widmayer,* 402 Ill. 143.) When the uncontradicted alibi testimony and the slender thread of evidence linking defendant with the crime is measured by this rule, we cannot say the proof is sufficient to justify the deprivation of defendant's liberty.

It was incumbent on the People to prove not only that a crime had been committed but also, beyond a reasonable doubt, that defendant was responsible for its perpetration. Because the proof failed in the latter respect, the judgment of conviction must be reversed. Moreover, since it does not appear that there are witnesses available other than those who have already testified, the cause will not be remanded for a new trial. *People* v. *Sheppard,* 402 Ill. 347; *People* v. *Bradley,* 375 Ill. 182.

*Judgment reversed.*