(No. 35165.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. FOREST BOYD, Plaintiff in Error.

*Opinion filed September 24, 1959.*

LEONARD W. GOLAN, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY and EDWIN A. STRUGALA, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Bristow delivered the opinion of the court:

Defendant and William Groves were tried jointly in the criminal court of Cook County without a jury and each was convicted of the crime of selling narcotic drugs. This writ of error is prosecuted by defendant Forest Boyd alone. The sole error which is assigned is that the State's evidence was insufficient to establish defendant's guilt beyond a reasonable doubt.

The State's two principal witnesses were Jeff Andrews and William Dantzler. Andrews testified that on October 14, 1957, he and Dantzler went to police headquarters where they were each thoroughly searched. Following the search a police officer gave Andrews five one-dollar bills, the serial numbers thereof having been recorded by the police. Andrews and Dantzler drove with police officers Hines and Ewing to within about a block of a building at 6911 Perry Street in the city of Chicago. Andrews testified that he rang the bell of the basement apartment of that building and the door was answered by William Groves. Andrews asked Groves where "the other fellow" was and Groves replied that he was at work. Groves then asked Andrews what he wanted and Andrews told him that he wanted some "reefers," meaning marijuana cigarettes. Groves invited him into the basement apartment and Andrews sat in the kitchen while Groves left the building for about 10 minutes. Upon his return, he told Andrews that the fellow would be right over. During the time that Andrews had this conversation with Groves, Dantzler was standing outside. Andrews told Groves that Dantzler was a friend of his and Groves then told Andrews to invite him in. Groves, Dantzler and Andrews sat around the kitchen for about 15 or 20 minutes and Dantzler then left the apartment for about five minutes and returned to the kitchen. Soon after Dantzler returned, the telephone rang, Groves answered it and came back and said that the fellow would be over in a few minutes. Shortly thereafter the

door bell rang and Boyd came in with a woman named Beatrice McNeil. Boyd went into another room for a few moments and then stuck his head into the kitchen door and asked Groves what he wanted. Groves went into the other room to talk to Boyd, and when he returned to the kitchen he reported to Andrews and Dantzler that Boyd would roll some cigarettes and told them that they cost fifty cents apiece. Andrews testified that he gave Groves $2 and told him that he wanted four cigarettes. Groves then went into the other room with the money and came back and said that they would be ready in a few minutes. Andrews then testified that after sitting at the kitchen table for about two or three minutes "Boyd called which I thought was Boyd." Defendant's counsel objected to the conclusion of the witness and the objection was sustained. Andrews then testified that it was Boyd and that he hollered, "All right, they are ready." Groves went into the other room and came back with four cigarettes and gave them to Andrews. Andrews and Dantzler went back to the police car and gave officer Hines the cigarettes and a description of Groves and defendant. On cross-examination Andrews admitted that he had been a dope addict for five or six years and that he had been cured a couple of times. The last time he was cured of the habit was about two years before the trial, and he had been off and on dope ever since. He characterized himself as a "stool pigeon" for officer Hines and testified that he had worked for Hines before; that he got no payment for working for him; that he worked for the police because he liked them as friends. He admitted that he had testified for Hines in other narcotics cases and that occasionally the police officers would buy him his lunch or help him out in paying his rent. He further testified upon cross-examination that he had previously been to this building where he had seen another fellow. He had never seen Boyd before October 14. The only time he had ever heard Boyd speak was when Boyd asked Groves what he

wanted. It was also brought out on cross-examination that while he and Dantzler were in the kitchen waiting for Boyd, two other men came into the kitchen and stayed for a few moments and then left.

Dantzler testified that on the day in question he was also searched at the police station, following which they went to the building. He testified that he waited outside the basement apartment for a while, then he saw Groves leave for a few minutes and went back and talked to Hines and Ewing and then returned to the apartment. About five or ten minutes after his return Boyd and a woman came into the house and Boyd and Groves went down a hall and Groves came back and sat down in the kitchen. Shortly thereafter Boyd hollered down the hall and asked, "What do you want?" Dantzler testified that Groves then went back into the other room where he had a conversation with Boyd that he did not hear, following which he returned to the kitchen and said that Boyd could roll some cigarettes. Dantzler testified that Andrews then gave Groves $2 and Groves went into the other room and came back with four cigarettes. Dantzler testified that he and Andrews then left the premises, where Andrews gave officer Hines the four cigarettes. On cross-examination, Dantzler admitted that he was a dope addict. He claimed that he hadn't used dope for about six months. He likewise characterized himself as a stool pigeon and testified that he was a stool pigeon because he liked to tell on people and he liked to see them go to jail. He had no record of how many men he had sent to the penitentiary but he had worked with officer Hines and officer Ewing on other occasions and had testified in cases where the defendants were sent to the penitentiary. He admitted that he had never seen Boyd before the date in question and had never heard him speak.

Officer Hines testified that he and Ewing were parked a short distance away from the building and that they saw Andrews enter the room. Shortly thereafter they saw

Groves come out and return in a few minutes and then saw Dantzler go into the building. Dantzler came back to the police car and had a conversation with the officers and then returned to the building. He then saw defendant and a woman go into the building and the next thing that happened was that Andrews came back to the car and gave him the cigarettes. Andrews remained on the street corner and officers Hines and Ewing went back to the building with Dantzler. Dantzler rang the bell and the door was answered by Boyd. The officers went in and placed Boyd and Groves under arrest for selling narcotics. Officer Ewing heard a commotion in another room and went in and brought Beatrice McNeil into the kitchen. Ewing stated that he had seen her throw three marijuana cigarettes on the floor. Officer Hines searched the defendant but did not find any of the marked money or any narcotics.

Groves testified that when Andrews first came to the door of the apartment he asked for a man named Larry who lived in the apartment. According to Groves, five people including Larry and himself lived there. Groves denied that Andrews asked him to sell any narcotics and denied having any conversation with respect to narcotics. Groves testified that he went out to see if he could find Larry and when he returned, he found Dantzler in the kitchen with Andrews. A short time thereafter defendant and Beatrice McNeil came into the apartment and went to the front room. Groves testified that at no time did defendant have any conversation with him, Andrews or Dantzler concerning marijuana cigarettes.

Defendant testified that on the day in question he met Beatrice McNeil on the street and went to her apartment in the building. She told him to come directly to her room because Groves was in the kitchen. Defendant testified that he went directly to her room, that he did not go through the kitchen, that he did not see Groves, Andrews or Dantzler and never had any conversation with any of them. He de-

nied that he asked Groves what he wanted and also denied hollering that the cigarettes were ready.

It is apparent that the judgment of conviction must stand or fall upon the testimony of Andrews and Dantzler. We have previously had occasion to consider the weight to be given the testimony of a narcotics addict who is a police informer. In *People* v. *Hamby,* 6 Ill.2d 559, we held that the fact that a witness is also a narcotics addict has an important bearing upon the credibility of the witness and likewise held that while, technically speaking, a police informer who co-operates with the police to arrange for a sale of narcotics is not an accomplice, the situation of such a witness is sufficiently similar to that of an accomplice to warrant close scrutiny of the witness's testimony. In *People* v. *Crump,* 5 Ill.2d 251, we quoted with approval the following language from *State* v. *Fong Loon,* 29 Idaho 248, 158 Pac. 233: "Habitual users of opium or other like narcotics become notorious liars. The chronic morphino-maniac is often a confirmed liar—the truth is not in him. The capacity of a witness to observe and to receive accurate impressions, to retain them in his memory, and to correctly relate them, also his power and inclination to be truthful, are all subjects which go to the credibility of a witness."

With these principles in mind, let us examine the testimony of Andrews and Dantzler. Neither of the witnesses claim to have paid money directly to defendant or to have received narcotics directly from him. According to the testimony of both men, the money was paid to Groves and the narcotics were received from him. The only evidence in the record linking defendant with the sale is the testimony of Andrews that he heard defendant holler that the cigarettes were ready. According to the uncontradicted testimony, defendant was not in Andrews's presence at this time and the identification of defendant as the man who spoke these words must rest upon Andrews's identification

of defendant's voice. He testified that he had never seen Boyd before the day of the sale and he had never heard him speak. According to Andrews's testimony he only saw defendant when he first came into the kitchen and again when he stuck his head into the kitchen door and said, "What do you want?" The testimony of Dantzler who was present at this time differs significantly from the testimony of Andrews. According to Dantzler, Groves and defendant went down a hallway, Groves returned, and the defendant hollered down the hall and asked, 'What do you want?" In other words, according to Dantzler, defendant never said anything in the presence of Andrews and Dantzler. The whole case must therefore depend upon Andrews's identification of defendant's voice. Considering the fact that, even according to him, he had only heard defendant say four words prior to the time he allegedly said that the cigarettes were ready, and further considering that his testimony as to hearing defendant speak in his presence conflicts with Dantzler's testimony and the fact that both Andrews and Dantzler were police informers and narcotics addicts, we are of the opinion that the State's testimony was insufficient to establish defendant's guilt beyond a reasonable doubt. Aside from Andrews's identification of the voice, the only evidence against defendant is that he was present in the apartment at the time of the sale. Mere presence at the scene of a crime is insufficient to establish guilt. (*People* v. *Magnafichi*, 9 Ill.2d 169.) In its brief in this court, the State argues that even without the identification of the voice, the conviction should be affirmed because the evidence shows that defendant went into the other room and that there was no evidence that there was anyone else in that room and that therefore it must have been defendant who had the cigarettes which were sold to Andrews. The burden was upon the State to establish the guilt of defendant beyond a reasonable doubt and if it intended to obtain a conviction by the process of elimination by showing

that no one else but defendant could have been guilty, the burden was upon it to show that there was no one else in the other room. The mere fact that defendant did not introduce any testimony that there were others present does not aid the State in its case.

For the reasons indicated the judgment of the criminal court of Cook County must be reversed. Since all of the persons who were present at the time of the sale testified at the trial, the case will not be remanded for a new trial. *People* v. *Guardino,* 13 Ill.2d 58.

*Judgment reversed.*