**People of the State of Illinois, Plaintiff-Appellee, v. Charles Henkel, Defendant-Appellant.**

**Gen. No. 64-32.**

Second District.

June 11, 1965.

331

Gordon Moffett, of Wheaton, for appellant.

William V. Hopf, State's Attorney, of Wheaton (James E. Fitzgerald and Edward Van De Houten, Jr., Assistant State's Attorneys, of counsel), for appellee.

ABRAHAMSON, P. J.

The defendant, Charles Henkel, was found guilty of burglary after a jury trial in the Circuit Court of Du Page County, and was sentenced to the penitentiary for a term of not less than three, or more than five, years. Post-trial motions to set aside the verdict, to grant a new trial, and to enter a judgment non obstante veredicto were denied and this appeal followed.

The People's evidence shows that sometime between 11:30 p. m. on February 10, 1963, and 7:00 a. m. on February 11, Willard's Hardware Store in Downers Grove was broken into and approximately 11 guns stolen. Entry had apparently been made by climbing on the roof of the building and descending through a vent from the second floor. The guns were removed through the back door, which unlocked from the inside. After opening the store at 7:00 a.m. on February 11, the owner immediately contacted the county police upon discovering that the store had been burglarized. Footprints through fresh snow led from the rear door to a spot where a car had obviously been parked during the night. The owner, who kept a list of all guns in stock in his store, furnished the police with a list of the missing guns and their serial numbers.

On May 17, 1963, approximately three months after the burglary, the defendant was arrested in the driveway of a house located at 407 Circle Drive, Hinsdale. The defendant had just driven into the driveway in a 1963 Buick owned by his former wife, Carol Henkel. Carol was a passenger in the automobile, sitting in the middle of the front seat, with another passenger, Dominic Amoroso, seated to her right. A search of the car disclosed a Buretta automatic pistol in the glove compartment located in front of Amoroso, which was identified as one of the guns stolen from Willard's Hardware. Carol Henkel, the only one of the three

occupants of the car to testify, stated she could not remember having seen the gun before that date and did not know how it got there.

Mrs. Henkel who testified for the State, stated that immediately prior to May 17, 1963, her automobile was used by Amoroso, her former husband, her mother, her stepfather, two women who resided with her, and an unnamed "friend of ours." In addition to herself, only the two other girls testified and both denied any knowledge of the gun before May 17.

The house at 407 Circle Drive was apparently owned by the mother of Carol Henkel, and occupied principally by Mrs. Henkel; another divorcee, Darlene Wise; their young children; and a baby-sitter, Dorothy Gallina, who lived with them. However, the testimony discloses that the defendant, Amoroso, and Darlene Wise's former husband also lived at the house from time to time and that there was a regular pattern of evening visits by male friends of Mrs. Henkel and Mrs. Wise, one of whom had given Mrs. Henkel the 1963 Buick involved. The defendant resided at the house for approximately one month during March or April, 1963.

Carol Henkel testified that sometime prior to May 17, 1963 she found a box of guns in the basement of the house at 407 Circle Drive. She did not know when or how the guns came to be placed in the basement but she, Mrs. Wise, and Miss Gallina moved them to the trunk of her car and Mrs. Henkel drove them to the home of her mother and stepfather located at 9938 Central Avenue, Oaklawn. At that address Mrs. Henkel transferred the guns from her car to the trunk of a car owned by Amoroso which was parked in the driveway. No one witnessed the transfer nor did she ever mention the guns to her former husband, the defendant.

The defendant was not living at the Circle Drive address at the time the guns were discovered by his former wife, and had not lived there for some time prior.

On November 11, 1963, nine months after the burglary, a cistern behind the home in Oaklawn was drained by police pursuant to a search warrant and disclosed a number of guns identified as those taken from Willard's Hardware. The guns could not be identified by Mrs. Henkel, Mrs. Wise or Miss Gallina, as the guns removed from the basement at 407 Circle Drive, Hinsdale.

There is nothing in the record to indicate that the defendant ever resided at or visited the home in Oaklawn. Although he was divorced from Carol Henkel in July of 1962, he did periodically stay at the house occupied by her. Amoroso was a more or less regular resident, and Carol Henkel's mother and stepfather were frequent visitors.

■ It is agreed that there is no evidence directly linking Charles Henkel with the burglary of Willard's Hardware store on February 11, 1963. The State bases its case on circumstantial evidence inferring the guilt of the accused. It is well settled that, under certain conditions, circumstantial evidence will be sufficient to warrant conviction for the commission of a crime. However, it is equally well settled that in order to support such a conviction, the circumstantial evidence must produce a reasonable and moral certainty that the accused committed the crime. People v. Widmayer, 402 Ill 143, 83 NE2d 285; People v. Magnafichi, 9 Ill2d 169, 137 NE2d 256; People v. Blair, 266 Ill 70, 170 NE 116.

The State relies on the rule that possession of recently stolen property is prima facie evidence of guilt unless the possession is explained in such a manner

335

to suggest a reasonable doubt of guilt. People v. Litberg, 413 Ill 132, 108 NE2d 468.

The cases hold that in order for the presumption to arise, the possession must be recent, unexplained, personal and exclusive. People v. Blades, 329 Ill 182, 160 NE 190; People v. Urban, 381 Ill 64, 44 NE2d 885.

The question of recency has been determined to be a factual one, properly for the determination of the jury, taking into consideration not only the element of time between the commission of the crime and the discovery of the stolen property in the possession of the accused, but, also, the character of the stolen goods, their saleability and portability, and the general circumstances of the particular case. People v. Malin, 372 Ill 422, 24 NE2d 349; People v. Litberg, 413 Ill 132, 108 NE2d 468, ibid. Legitimate doubts might be raised about the recency of the possession in this case. The stolen guns were found, as we have stated, in two lots and on two different occasions, approximately three months and nine months respectively after the occurrence of the crime.

However, we feel a more serious question is raised by the record that obviates any consideration of the problem of recency. The rule we have cited above, and with which we agree, also provides that the possession must be personal and exclusive.

In the case of The People v. Barnes, 311 Ill 559, 143 NE 445, the Supreme Court, in reversing a judgment rendered on a guilty verdict for the larceny of an automobile in which the accused was discovered to be a passenger within four hours of its theft, stated as follows:

> "Mere association with a stolen article is not necessarily possession of it, and before any presumption can arise from possession, it must be shown that the person accused is actually in pos-

session. In order that an inference of guilt may be drawn from possession of goods recently stolen it must be shown that there is an actual personal possession on the part of the accused, either singly or jointly, with others acting in concert with him, and that that possession is exclusive in him or those acting in concert with him."

The State recognizes that the possession must be exclusive in order for the rule to apply but argues that this exclusive possession can be exercised jointly with others. However, the joint exercise must involve concerted action involving the accused and the others sharing the joint control of the stolen goods. No evidence of any concerted action or joint exercise between the accused and others appears in the record before us.

While the accused was driving an automobile, three months after the crime, in which one of the stolen guns was found, the evidence discloses that the car was regularly used by at least eight other persons. The car belonged to his former wife from whom he had been divorced approximately ten months earlier. There is no evidence of how often he used the car or his relationship with any of the many people who used it other than his former wife. The evidence clearly fails to establish the fact that the defendant was ever in the exercise of exclusive, whether individual or joint, personal possession of the pistol in the glove compartment.

There is even less proof connecting the other guns found in the cistern behind the home in Oaklawn on November 11 with the defendant. While Mrs. Henkel testified that she did transfer "some guns" from the home in Hinsdale at some date prior to May 17 to the home of her parents in Oaklawn, she and the other witnesses were unable to identify the guns found in the cistern with those that they moved.

■■ The defendant was not residing at the Hinsdale address at the time the guns were discovered in the basement, nor is there evidence that he ever inquired about them before or after their removal. The thread connecting the guns with the defendant is far too slender to support any reasonable inference of possession as contemplated in the rule with which we are concerned. In order for a presumption of guilt to be established on the unexplained possession of recently stolen property, it is necessary to prove that the accused was in actual, not constructive, possession of the property. People v. Mulvaney, 286 Ill 114, 121 NE 229; People v. Henneman, 367 Ill 151, 10 NE2d 649.

As we have said, that possession must be exclusive and personal. People v. Urban, ibid. While the defendant did not testify, and so did not offer any "explanation" of his connection with the stolen guns, such explanation was unnecessary since the State had failed to establish that he was ever in possession of them. Because of these shortcomings in the State's case, we do not feel that the guilt of the defendant was established beyond a reasonable doubt or that his conviction can stand. We, therefore, reverse his judgment of conviction and do not consider the other assignments of error. Moreover, since it does not appear that there are witnesses available other than those who have already testified, the cause will not be remanded for a new trial. People v. Sheppard, 402 Ill 347, 83 NE2d 587; People v. Magnafichi, 9 Ill2d 169, 137 NE2d 256, ibid.

Judgment reversed.

MORAN and DAVIS, JJ., concur.