THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. K.D. CRAIG, Defendant-Appellant.

First District (5th Division)   No. 1—87—2434

Opinion filed December 15, 1989.

*Justice Pincham participated in the decision prior to his resignation.

Randolph N. Stone, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, LaCoulton Walls, and James D. Brosnahan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant, K.D. Craig, was convicted of one count of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2A) and was sentenced to six years' imprisonment.

We affirm. The following facts are pertinent to our decision.

William J. Maza, the complainant, was also the sole occurrence

witness. Maza testified that the incident at issue occurred on November 8, 1986. At approximately 3 p.m. on that date, Maza was in his car and was stopped at a traffic light at the intersection of 14th Street and Wentworth Avenue in Chicago. Maza stated that as he waited for the light to change, an older model Oldsmobile driven by defendant pulled up next to his car in the lane to his left. Maza stated that he recognized defendant and knew defendant as K.D. Maza testified defendant exited his vehicle and walked around the front of his car to the driver's side of Maza's car. There was no window on the driver's side door of Maza's car. Maza stated defendant reached in the waistband of his trousers, pulled out a revolver, placed the gun to Maza's head, and demanded his money. Maza stated he handed defendant $190 and defendant told him, "We're even." Maza testified he drove directly to the Chicago Heights police station, where he told officers that a man named K.D. robbed him at gunpoint.

Maza testified that three days later, he identified, for Chicago Heights police, photographs of defendant and defendant's car. Maza also subsequently identified defendant in a five-man lineup at the Chicago Heights police station.

During direct testimony, Maza admitted that five years prior to the incident, he was using heroin, but he had not used heroin since that time.

Several inconsistencies existed in Maza's testimony.

During cross-examination, Maza admitted that after the incident, he described the assailant to police officers as being a 35- to 40-year-old black male, standing 5 feet 9 inches tall, and weighing 170 pounds. However, when Maza identified the defendant in court as his assailant, he admitted defendant was approximately 6 feet 3 inches tall and weighed more than 170 pounds.

Maza admitted he told police officers that defendant had driven a red, 1967 or 1968 model, four-door Oldsmobile. However, the car Maza identified as defendant's from photographs was actually a maroon, 1976 model, two-door Oldsmobile.

Maza also testified that after defendant placed the revolver to Maza's head, defendant ordered, "Give me your money, motherfucker." However, both Mark J. Obregon and Robert F. Pinnow, members of the Chicago Heights police force, testified that when interviewed after the incident, Maza stated defendant had said only, "Give me your money." Maza had told Pinnow that defendant had said, "We're even, motherfucker," after Maza handed the money over to the defendant.

Maza stated that the $190 stolen from him was a cash payment he received on the morning of November 8, 1986, from Raul Rivera for work Maza performed for Rivera's landscaping business. However, Rivera stated he did not pay Maza $190 on November 8, 1986, and, in fact, had never paid Maza any money for any work performed by Maza.

During cross-examination, Maza consented to allow defendant's counsel and the trial judges to inspect his arms for recent needle marks. Defendant's counsel stated he believed needle marks on Maza's arms were recent, not scars from past heroin use, and indicated his intent to present an expert to establish that fact, contrary to Maza's testimony. At that point, the trial judge stated counsel could present such testimony but declined to permit the expert to be present during Maza's questioning.

Pinnow corroborated Maza's testimony regarding identification of the photographs of defendant, defendant's car, and, from the lineup, defendant, himself. Pinnow testified that when he interviewed Maza after the incident on November 8, 1986, Maza had appeared upset because he had been robbed.

Defendant testified that on the morning of November 8, 1986, defendant drove his car to Willie Lawrence's house because Lawrence wanted to borrow defendant's car. Defendant took a bus from 14th Street and Wentworth Avenue to the bus depot in downtown Chicago Heights. Via a transfer, defendant stated he rode another bus to 95th Street in Chicago. Defendant stated he then hired a cab to take him to 65th and Laflin Streets in Chicago, where, defendant testified, he spent two days. Defendant stated that, two days later, he called Lawrence, who told defendant that Chicago Heights police had towed defendant's car and wanted to question defendant. Defendant stated he went voluntarily to the police station.

Defendant testified that two weeks before November 8, 1986, Maza had approached defendant and asked defendant if defendant could get Maza some heroin. Defendant stated Maza was suffering from heroin withdrawal. Defendant stated Maza gave defendant $38 for the heroin purchase. However, defendant stated, he did not obtain the heroin and did not return to see Maza for fear of being "set up" because Maza had been described to defendant as a "stupid John for the police."

On cross-examination, defendant stated that for eight days beginning on November 8, 1986, he stayed with his friend and his friend's family in their house at 65th and Laflin Streets. Defendant stated that he contacted Lawrence about the car approximately four days

after November 8, 1986. Defendant denied that he had earlier testified he stayed at the address at 65th and Laflin Streets for only two days and that he had contacted Lawrence only two days after November 8, 1986. Defendant admitted that he did not go to see the police until approximately November 22, 1986, some 10 days after he stated Lawrence had told him police wanted to question him.

At the conclusion of defendant's testimony, defendant's counsel indicated his intention to call Willie Lawrence to testify, but Lawrence was not present. The trial judge then noted that the time was 4:42 p.m. and adjourned court, indicating the trial would conclude the next day. When defendant's counsel asked whether the trial would conclude without regard to whether Lawrence could be located, the trial judge reiterated the last opportunity to present evidence would be the next day.

Defendant's counsel also then indicated his intention to call Helen O'Connor, a worker in a methadone clinic, as an expert witness, to testify that needle marks on Maza's arms indicated recent heroin use. The trial judge stated, however, that, as fact finder, he did not "need" such testimony.

On the following day, defendant's counsel indicated Lawrence could not be located to testify and moved for a continuance to secure Lawrence's presence. The trial judge denied that motion, stating he had adjourned court on the previous day to permit defendant's counsel opportunity to locate Lawrence. The trial judge further observed that defense counsel "had been demanding trial for quite some time," and asked counsel whether Lawrence was under subpoena to testify. Defendant's counsel stated that Lawrence was not under subpoena to testify, explaining that Lawrence had indicated his intent to cooperate voluntarily.

Defendant was convicted on April 30, 1987. Defendant's subsequently filed motion for a new trial was denied on July 21, 1987. This appeal followed.

Opinion

On appeal, defendant first contends the trial judge's refusal to permit presentation of expert testimony to establish that the needle marks on Maza's arms were recent justifies reversal and a new trial. Defendant relies primarily on *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201, and *People v. Boyd* (1959), 17 Ill. 2d 321, 161 N.E.2d 311. Both *Strother* and *Boyd* involved the issue of the credibility of testimony of habitual narcotics users.

In *Boyd*, the defendant's conviction rested on the identification of

another person's voice by Jeff Andrews, a narcotics addict and police informer. The supreme court noted that such a witness' testimony warrants close scrutiny. (*Boyd*, 17 Ill. 2d at 326, 161 N.E.2d at 314.) And, because Andrews' testimony was materially contradicted by a second narcotics addict who was also a police informer, the supreme court concluded Andrews' testimony was insufficient to provide proof beyond a reasonable doubt. *Boyd*, 17 Ill. 2d at 327, 161 N.E.2d at 314.

*Strother* also involved the testimony of a police informer who was a narcotics addict. In his direct examination, Albert Bradley admitted that he had been addicted to heroin but had not used narcotics for approximately 10 years prior to the trial. During cross-examination, defense counsel, in chambers, asked that he be allowed to examine Bradley's arm, outside the jury's presence, for recent needle marks. The trial judge sustained the prosecutor's objection to that request, but offered defendant time to have a physician examine Bradley's arm.

The supreme court observed, " '[t]he question of whether a witness is a narcotics addict is an important consideration in passing upon the credibility of a witness [because] *** the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars.' " (*Strother*, 53 Ill. 2d at 99, 290 N.E.2d at 204, quoting from *People v. Lewis* (1962), 25 Ill. 2d 396, 399, 185 N.E.2d 168, 169.) Because the inference to be drawn from the existence of marks indicating recent narcotics use was a question for the jury as the finder of fact, the supreme court concluded the trial judge's refusal to permit defense counsel to examine Bradley's arm and exhibit Bradley's arm to the jury unduly restricted the cross-examination of Bradley and prejudiced defendant's right to a fair trial. *Strother*, 53 Ill. 2d at 99, 290 N.E.2d at 204.

We are mindful of the suspicion cast upon the testimony of a narcotics addict as observed in cases such as *Boyd* and *Strother*, above. We do not, however, find basis therein to support reversal of defendant's conviction in the instant case. The record indicates the trial judge, as finder of fact, considered Maza's credibility in light of his use of drugs. In his findings, the trial judge, borrowing a phrase from counsel, acknowledged Maza was not a "pillar[] of the community" and that Maza was a narcotics user. The trial judge, in fact, noted defendant's testimony established Maza had approached defendant shortly before November 8, 1986, to procure heroin for him. Nevertheless, the trial judge, having had opportunity to observe Maza's demeanor in his testimony at trial, indicated he believed Ma-

za's testimony that Maza had been robbed by the defendant. Because that determination was made despite evidence indicating Maza's heroin use as recently as two weeks prior to the incident, we can find no basis to conclude the refusal to allow expert testimony to establish similar facts for impeachment purposes provides a basis to. disturb defendant's conviction.

Defendant next contends the trial judge's refusal to continue the trial to permit defendant's counsel additional time to locate Willie Lawrence provides basis to reverse defendant's conviction. We do not agree.

■ The decision to grant or deny a motion for a continuance is within the discretion of the trial court which may look to defendant's diligence, or lack thereof, in making its decision. *People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.

■ The record indicates that on April 8, 1987, the instant matter was given a trial date of April 29, 1987. During that time, no attempt was made to subpoena Lawrence to insure his attendance at trial. Further, as the trial judge noted, defendant demanded a speedy trial. In light of those facts, we cannot conclude that the trial judge abused his discretion in denying defendant a continuance.

Defendant last contends the State failed to prove defendant guilty beyond a reasonable doubt. Defendant points out that his conviction was based on Maza's uncorroborated testimony as the sole occurrence witness. Defendant specifically calls attention to the inconsistencies in Maza's testimony we have noted above.

■ Although discrepancies do exist with respect to Maza's testimony, we note that minor inconsistencies in testimony go only to the weight of the evidence and not to its sufficiency. (*People v. Brown* (1986), 150 Ill. App. 3d 535, 501 N.E.2d 1347.) Further, the testimony of a single complaining witness, when credible, is sufficient to sustain a conviction. (*People v. Spencer* (1983), 119 Ill. App. 3d 971, 457 N.E.2d 473.) That controlling principle applies even where the testimony is that of a narcotics addict, when supported by surrounding circumstances. See *People v. Rollins* (1982), 108 Ill. App. 3d 480, 438 N.E.2d 1322.

■ In the instant case, the record indicates that when Maza reported the incident to police he was upset. He told police that his assailant's name was K.D. Later, Maza positively identified a photograph of defendant, defendant's car, and picked defendant out of a police lineup. As the trial judge noted in his findings, Maza essentially recounted the same events surrounding the incident when he first reported the incident, in subsequent meetings with police, and

at trial. We view the inconsistencies in Maza's testimony minor and decline to substitute our judgment for that of the trial judge as trier of fact.

Affirmed.

MURRAY, P.J., and PINCHAM,* J., concur.

---

*Justice Pincham participated in the decision prior to his resignation.