(No. 15536.—Reversed in part and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM EVERTSON *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*when testimony as to confession of accomplice is not admissible.* Where a party arrested for burglary makes a confession implicating the defendants, who were indicted while he himself was not placed on trial and did not testify, police officers should not be permitted to testify as to the details of the confession, where none of the defendants were present when it was made.

2. SAME—*when testimony as to the defendant's marriage with witness is not admissible without proper foundation.* A defendant charged with burglary and larceny is not required, on cross-examination, to detail the circumstances leading up to his marriage with a negress who might have been a witness, for the purpose of showing that the marriage was celebrated solely for the purpose of rendering the woman incompetent to testify, where no proper foundation is laid for the introduction of the irrelevant evidence.

3. SAME—*when evidence as to finding of burglar's tools is not relevant.* In a prosecution for burglary and larceny a detective should not be permitted to testify to his finding of a lot of burglar's tools in a garage in the neighborhood where one of the defendants roomed, where there is no proof that the articles found had ever been in the possession of any of the defendants, or that they were used in connection with the crime charged, or as to how they got into the garage, or how long they had been there, or who owned them.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

STEWART & O'BRIEN, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, William Evertson, William J. Tatton and Charles Caulo, were convicted in the criminal court of Cook county of burglary and larceny, and John Niznik and Orrie Cole were convicted of receiving stolen property. The place burglarized was the real estate office of George F. Harding, at 3101 Cottage Grove avenue, Chicago, and the property taken consisted of money and bonds. Plaintiffs in error seek to reverse the judgments for errors occurring on the trial.

Louis Strobel was arrested for this burglary and made a confession of his participation in it, implicating Evertson, Tatton and Caulo. He was not placed on trial and did not testify in this case. Notwithstanding this, the complaining witness and two police officers detailed to the jury the story told them by Strobel. None of plaintiffs in error were present when Strobel made his confession. That it was error to receive this evidence is so elementary that citation of authority is unnecessary.

Evertson was arrested and questioned by the police. The officers testified that he denied any connection whatever with the burglary but admitted that Strobel and others were in his room, at 2437 Prairie avenue, and that they had in their possession certain bonds and checks which they said had been stolen from Harding. They further testified that he said he was very drunk, that he paid no attention to Strobel and his companions, and that he did not participate in a division of the stolen property. On the trial

Evertson testified that he lived at 3132 Emerald avenue; that he was married and had five children; that he was engaged in the express business; that he owned two trucks, which he kept at a garage at 317 East Thirtieth street; that he had a room at 2437 Prairie avenue, where he sold intoxicating liquors; that Strobel and his companions came to this room to buy moonshine; that he did not see bonds in their possession; that they did not divide money among themselves in his room; that they did not tell him anything about the burglary of the Harding real estate office and that he knows nothing about it. All of the testimony for the prosecution and the defense is to the effect that Evertson did not participate in this burglary or in the distribution of the spoils.

Tatton was arrested and questioned by the police. They say that he told them that he took the key to the Harding office from the place where the janitress placed it and had a duplicate made and gave this duplicate key to his brother so that he could get into the office. He pointed out to the officers the hardware store where the duplicate key was made. On the trial he testified that he had been employed as shipping clerk by VanCleef Bros., manufacturing chemists, from 1918 to 1922; that he left them in May, 1922, and engaged in the second-hand business at 504 East Thirty-first street, which is across the street from the Harding office; that he was arrested and questioned many times concerning his connection with the burglary; that he repeatedly denied any knowledge of it; that he was beaten several times, and finally, to save himself from further beatings, admitted furnishing the key to his brother; that he did not furnish a key to his brother and that his statement to the police was false; that the first information he had of the burglary was when the janitress, who was living with him, came from the Harding office to his store and told him of the burglary; that the burglary occurred January 3 and that he married the janitress January 11. His brother was not

under arrest or on trial, and there is no competent evidence in the record to show that he had anything whatever to do with the burglary. Tatton is a white man and the janitress he married is a negress. On cross-examination he was compelled, over objection, to point out his wife in the court room, and she was directed to walk before the jury and exhibit herself. There was an examination of great length regarding his marriage to her, the time when it occurred and the reasons for it. If it had been shown that this woman was in possession of information which would have shown Tatton's connection with this burglary and that he married her for the purpose of rendering her incompetent, then it would have been proper to have shown this scheme for the purpose of showing consciousness of guilt. There was no effort, however, to lay this foundation for the testimony and it was therefore clearly irrelevant. The cross-examination was highly improper and the natural effect of it was to prejudice Tatton in the minds of the jury. Paul VanCleef testified that Tatton worked for his firm about four years and that his reputation for honesty was good. The record shows that when the employees reached the Harding office the morning after the burglary the door was locked and one of the windows was unfastened. As far as Tatton is concerned, there is no competent evidence that the office was entered by means of a key, and there is no evidence that he was connected, directly or indirectly, with the burglary of the Harding office.

Caulo was arrested, and the police testified that he told them, in the presence of Strobel, that he participated in the burglary; that he stood guard for a while and that he then helped move the safe which contained the bonds and money into a back room, where it was blown, and that he received $724 as his share of the money taken. Caulo testified that he was on parole from Pontiac at the time he was arrested; that he was employed regularly; that he was at his place

of residence on the night of the burglary; that he did not participate in the burglary and knew nothing of it prior to the time of his arrest; that he knew Evertson and Strobel by sight; that he went with some companions to Evertson's place to buy some liquor and that he saw Strobel in the room at that time; that at the time he was arrested he told the police he knew nothing about the burglary, but finally, to save himself from a beating, admitted participation in it.

Michael Hughes, chief of detectives, testified that he went to a garage at 2447 Prairie avenue January 12, 1923; that in the garage was a Republic truck which Evertson said belonged to him; that on the floor and on shelves in the garage he found a large quantity of burglar's tools, consisting of three small bottles of nitro-glycerine, several drills and punches, a bolt-cutter, some percussion caps and fuse, some cartridges, three revolvers, a rifle and five shot-guns. He was permitted to say that he learned that the shot-guns had been stolen from the White Sox ball park. The garage was rented by Strobel, and Evertson denied that he had anything to do with that garage or that he owned the truck that was in it. He denied knowledge or ownership of the articles found there. There is no proof that those articles had ever been in the possession of any of the persons on trial or that they were used in connection with the crime charged. No evidence was introduced to show who put them in the garage, how long they had been there or who owned them. All of this evidence was irrelevant and clearly inadmissible.

Mrs. Cole was arrested in the city of New York. She had cashed some of Harding's coupons at a bank in New York City and had received for them a check, which she had in her possession at the time of her arrest. Officer Grady, who went to New York to bring her back to Chicago, testified that she told him that Niznik asked her on January 11 if she wanted to go to New York; that she said she did and asked him if he had enough money; that

he told her he had $125 and could get more money when he reached New York; that the first time she saw the coupons which she sold in New York was in the St. Margaret Hotel in that city; that Niznik told her he had some brothers in business in New York City, and that she assumed he received the coupons from them. There was no other evidence connecting Mrs. Cole with the crime charged. She is charged with receiving stolen property in Cook county, Illinois, but all the proof shows that she received the property in the State of New York, and there is no proof that she knew that it was stolen when she received it.

Niznik was arrested in the city of New York and confessed that he received the bonds and coupons found in his possession from Strobel in the city of Chicago; that he knew the bonds had been stolen from Harding's real estate office in Chicago; that he used Mrs. Cole to help him dispose of the bonds; that when Strobel delivered the bonds to him it was agreed that Niznik was to pay Strobel $5000 and that he was to have the balance for disposing of them; that he expected to make about $2000 on the transaction and that Mrs. Cole was to get nothing except her trip to New York and back. Niznik did not testify on the trial and there is no question of his guilt of the crime for which he is convicted. The errors in the record which must reverse the other judgments were not prejudicial to Niznik.

The judgment of conviction of John Niznik is affirmed. The judgments of conviction of William Evertson, William J. Tatton, Charles Caulo and Orrie Cole are reversed and the cause remanded.

> *Judgment affirmed as to Niznik.*
> *Reversed and remanded as to others.*