(No. 26751.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WINCEL URBAN, Plaintiff in Error.

*Opinion filed November 17, 1942.*

WM. SCOTT STEWART, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH POPE, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Plaintiff in error, Wincel Urban, and codefendants, Stanley Warwick, Emil Weis and Earl Nelson, were jointly indicted in the criminal court of Cook county for the burglary of a meat market. It does not appear that Warwick was apprehended. The indictment was dismissed as to Nelson prior to the trial. Weis was granted a separate trial but later the indictment was nollied as to him. After motions for a new trial and in arrest of judgment were overruled, plaintiff in error was committed to the Illinois State Penitentiary for the statutory indeterminate term.

The burglary occurred between the hours of 7:00 P. M. Saturday, August 3, 1940, and 8:00 P. M. the following day. Entrance to the market was gained through an outer door which had been fastened by a Segal lock. The lock was detached from the door and stolen. A safe was burglarized and some insurance papers, $180 in cash and a strongbox which formed one of the compartments of the safe were also stolen. The strongbox was fastened with a combination lock and contained about $80 in cash. On August 5, the Segal lock and the strongbox, with the contents intact, were found in a garage located to the rear of a hotel on Cornell avenue.

The only evidence connecting plaintiff in error with the burglary are the circumstances hereinafter related as to his connection with the rental of the garage where the stolen property was found, his going to the garage and unlocking it and the possession of a key that fit the Segal lock.

Margaret Grant, the manager of the hotel, testified that on August 4, two men came to the hotel and made in-

quiry relative to the renting of the garage. Her conversation was with a man who gave the name of Nelson and said he resided at a number directly across the street from the hotel. She issued a receipt to Nelson for the rental paid. A man by the name of Nelson was taken into custody, but she could not identify him as the one from whom she received the rental money. Her identification of plaintiff in error as the other party was positive and she testified that when she and Nelson were discussing terms of rental and the price, plaintiff in error commented that the rental was high.

On the morning of August 5, Mrs. Grant was advised by one of her employees that men were seen going into the garage the preceding day and, acting on such information, she unlocked the garage door with a master key and seeing articles which she suspected of being burglarious tools, notified the police. They found the Segal lock and the strongbox which had not been opened. In addition the following were found with the stolen articles, three revolvers, a small bottle of nitroglycerin, percussion caps, and a black bag containing an electric drill, wires, bars, flashlight, pipe, soap and cotton padding. The police officers secreted themselves in a garage nearby and about 8:30 o'clock that evening, plaintiff in error and Weis came to the garage. The police testified that plaintiff in error produced a key with which he unlocked the garage door and that Weis entered and as he turned to come out the officers placed both under arrest. The police obtained three keys from plaintiff in error, one of which fit the lock on the garage door, another opened the Segal lock and the third was not identified as fitting any lock.

Weis, called as a witness on behalf of the State, testified he was an expert safe, lock and vault repairman, that he had several years of experience and had been employed for long periods of time by the leading safe and vault companies doing business in Chicago. He stated that about

6:30 on the evening of August 5, he was at home and received a telephone call, that pursuant to the call he met plaintiff in error at the intersection of Fifty-fifth street and Lake Park avenue, which was about twelve blocks from his home, that while he was waiting at the intersection plaintiff in error approached and inquired if he was Weis and being informed that it was Weis, plaintiff in error told him that the safe was in a garage and that they would go see if "the fellow was there." They got in Weis' car and drove about one-half a block when plaintiff in error told Weis to wait and he would see if the "fellow was there." Weis testified to becoming ill during plaintiff in error's absence and stated that after plaintiff in error returned he said: "The man is there," and the two proceeded up the alley to the garage; that he thought plaintiff in error had a key but he was not sure; that he went into the garage first and plaintiff in error followed, and that immediately the police arrested them. Weis denied any previous acquaintance with plaintiff in error but the evidence of plaintiff in error and other witnesses casts doubt upon the truthfulness of such statement.

Plaintiff in error testified that he came to Chicago a few weeks previous to his arrest, that soon after arrival he formed an acquaintance with Weis and that they planned going into the business of buying and selling used safes. Weis was to procure an agency with a safe company and through this means was to locate persons who had used safes for sale and was to learn of prospective buyers. Plaintiff in error was to buy and sell the safes which Weis located. He stated he had made many trips to various places in Chicago with Weis in receiving instructions in reference to the proposed business venture. Weis corroborates plaintiff in error in that he went to some of the places named to work on safes but denies that plaintiff in error accompanied him. Plaintiff in error testified that on the night of the arrest he received a telephone call from

Weis and thereafter met him in front of his apartment on Fifty-third street, that they went in Weis' car to Fifty-fifth street where the car was parked, and they started walking up the alley. He testified before they started in the alley Weis said: "I rented a garage for the purpose of storing safes." He also stated that while they were walking in the alley Weis became ill and handed some keys to him. He admits that he unlocked the garage but states he used one of the keys which Weis handed him. He denied any connection with the burglary, the renting of the garage or any knowledge as to the ownership of the guns or burglarious tools found in the garage.

The police officers were permitted to testify as to the finding of the burglarious tools and equipment in the garage and after preliminary identification was established they were admitted in evidence. This ruling is urged as reversible error. The owner of the market testified to the condition of the market when he returned there Sunday evening about 8 o'clock. He stated there was a hole in the outer door, the lock was missing and that the safe was "torn to pieces; it was smashed." There is no evidence indicating the size of the hole in the door or in what manner the safe was torn to pieces and wrecked. There is nothing from which it can be inferred that tools or instruments of the character of those found in the garage might have been used in making the opening in the door or in the wrecking of the safe.

The general rule which controls the introduction of burglarious tools and implements is, that after preliminary proof of the burglary has been shown, it is competent for the State to prove that the defendant was found to have burglarious tools or implements in his possession shortly after the alleged burglary. (9 C. J. 1073.) If such proof is made, then the tools or implements so found in the possession of the defendant may be introduced in evidence. (*Williams* v. *People,* 196 Ill. 173.) The possession of

burglarious tools and implements is permitted to be proven upon much the same principle that admits proof that the defendant had in his possession property that was taken in the burglary. In either case the defendant's possession must be proven to be recent or soon after the commission of the offense and it must appear to have been exclusive. If the evidence does not connect the person accused of the burglary with the tools and there is no proof that they had been in his exclusive possession, evidence relating to them is inadmissible. *People* v. *Evertson,* 310 Ill. 397; *People* v. *Fontana,* 356 id. 461.

In this case the evidence does not show that plaintiff in error ever at any time had the exclusive possession of the burglarious tools and implements found in the garage. The evidence of Mrs. Grant was that she rented the garage to a Mr. Nelson and the only connection plaintiff in error had in reference to its rental was his presence when Nelson was negotiating for a lease and the comment he made to Mrs. Grant during the course of such negotiation that the rental asked was high. In addition the evidence shows that Mrs. Grant received information from her employee at the hotel that on Sunday men were seen going into the garage, which would be subsequent to renting it to Nelson and before the discovery of the burglarious tools and the stolen property in it. Plaintiff in error is not identified as being one of those parties. There is no evidence when the tools were placed in the garage or when they were left there. The evidence is plaintiff in error had a key in his possession which fit the lock on the door to the garage, but there is evidence that Mrs. Grant also had a key and there is no evidence negativing the existence of other keys which would unlock the door. There is no question raised as to the admissibility of the Segal lock or of the strongbox, but the fact that the burglarious tools were found in the garage with these articles does not permit the introduction of the tools in evidence. They must be in some way iden-

tified with the breaking of the door and safe at the meat market or identified as being in the exclusive possession of plaintiff in error soon after the commission of the offense. The evidence does not show plaintiff in error had such possession and there is no other evidence which connects plaintiff in error with the possession of the tools or connects the tools with the breaking of the meat-market door or the wrecking of the safe. It was prejudicial to plaintiff in error to admit the testimony of the police officers in reference to the finding of the tools in the garage and in admitting the tools in evidence.

Error is assigned on the giving of instruction number five. It stated that the exclusive possession of the proceeds of the crime of burglary shortly after the crime was committed was, if unexplained, sufficient to raise an inference of guilt and to authorize a conviction in the absence of other evidence of facts or circumstances which created a reasonable doubt as to the guilt of the accused. Before such an instruction can be properly given in a case such as this, it must be made to appear that the defendant's possession of the stolen property was not only recent but that it was exclusive and as is said in *People* v. *Mulvaney,* 286 Ill. 114, "it must be personal, exclusive and with a distinct implied or express assertion of ownership. A mere constructive possession is not enough." As has been pointed out in reference to the exclusive possession of the burglarious tools, plaintiff in error's possession of the Segal lock and the strongbox found in the garage does not appear to be exclusive so as to warrant the giving of the instructions complained of. The only evidence connecting plaintiff in error with any right in the garage is whatever inference might arise from his presence when Nelson rented the garage from Mrs. Grant and from the fact that the police took from him the keys, one of which unlocked the garage door and the other fit the Segal lock.

Furthermore, plaintiff in error's testimony, that Weis gave him the keys when Weis became ill, is in conflict with Weis' version of the affair, but it was plaintiff in error's explanation as to how he came into possession of the keys, and with the evidence of such explanation before the jury it was not proper to give an instruction assuming that the possession had been unexplained. *People* v. *Himstedt,* 377 Ill. 498; *Miller* v. *People,* 229 id. 376.

It is urged that there was error in the giving and refusing of other instructions. We have examined the same and find that such objections are without merit.

For the reasons assigned, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*