**Floyd FLAMER, Defendant Below, Appellant,**

v.

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Feb. 15, 1967.

Michael F. Tucker, Asst. Public Defender, for defendant below, appellant.

Michael N. Castle, Deputy Atty. Gen., for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice.

This appeal presents the question of whether the joint possession of recently stolen goods by several persons permits a presumption of guilt as to one.

The defendant Floyd Flamer appeals from conviction by a jury on two charges of burglary and two charges of conspiracy with Howard Warner and Frank Glaze, Jr. to commit the burglaries.

The State's evidence established the following facts:

On April 30, 1964, at about 12:45 P.M. a man stopped at the home of Joseph Beck, located in a rural area, and asked for directions. Beck observed two other men waiting in the inquirer's automobile and he saw the automobile stop again at the home of his brother, a short distance away. Having become suspicious and knowing that his brother was away, Beck followed, saw that the front door was broken down, and pursued the inquirer's automobile long enough to note its make, color and license number. Beck reported the incident and identified the car to the police. Upon returning to his brother's home, Beck found the front door broken in half and lying on the living room floor; mud was on the floor; but nothing was missing.

George Rhoads, who lived nearby, left his home on the morning of the same day after locking both front and back doors. When he returned that afternoon, he found open the front door which he had left locked, the telephone wires were cut, and several electrical appliances and other household furnishings were missing. Also nearby was the home of Mrs. Bernice Dill. On the day in question, she left in the morning and returned in the afternoon. Upon her return, she found broken the glass of the rear storm door and blood on the inner door which had been broken open. Her television set was in the driveway and missing were several electrical appliances and other household furnishings.

At about 2:15 P.M., a police officer recognized the automobile reported by Beck and he gave chase. The vehicle contained household goods and was being driven at high speed. After a short chase, the automobile stopped and the defendant Flamer exited from the driver's seat. The other two occupants of the car got out momentarily, but they jumped back into the automobile and sped away. Flamer made no attempt to escape and was taken into custody. The officer continued the pursuit and, a few minutes later, the automobile was found demolished and items stolen from the Rhoads and Dill houses were found in or near the damaged car. It was discovered also that Flamer was bleeding from a cut hand.

Flamer, Warner and Glaze had been indicted jointly for the burglary of the Beck, Rhoads and Dill houses and for conspiracy to commit the burglaries. Warner and Glaze had entered guilty pleas and had been sentenced. Only Flamer went to trial.

At the trial, Flamer testified that he had borrowed the automobile involved from a friend in Wilmington for the purpose of driving to Dover for a chauffeur's license; that he invited Warner and Glaze to go along for the ride. Flamer testified that they stopped at Beck's house for directions; that as they left Beck's house Warner told Flamer to stop at the next house because he knew the owner; that Warner and Glaze went to the front door of the house and returned shortly saying that someone had torn down the door. Flamer further testified that upon arrival in Dover, he sought a certain official of the Motor Vehicle Department but was told that the official would not return until 1:00 P.M.; that he, Flamer, waited in Dover while Warner and Glaze took the automobile purportedly to visit friends; that when they returned at about 1:45 P.M., there were articles of household furnishings in the back of the car which they said they were transporting to Wilmington for friends. En route back to Wilmington, according to Flamer, he drove at high speed because he was late in returning the borrowed car. He testified that he stopped when he realized a police officer was in pursuit; that he cut his finger when, in compliance with the officer's instructions, he reached for the car keys through a broken window; that the mud on his shoes was from the roadside when he emerged from the car upon the officer's command.

At the trial, Warner corroborated Flamer's testimony, implicated himself and Glaze, and exonerated Flamer. Flamer was convicted on the Rhoads and Dill burglary charges and the related conspiracy charges, judgment of acquittal having been entered on the Beck burglary and conspiracy charges for want of evidence. Flamer appeals upon the grounds that there were errors in the jury instructions and that the evidence was insufficient to support the conviction.

I.

The defendant asserts that the trial court erred in applying to the defendant the rule that the unexplained possession of recently stolen property permits a presumption of guilt.

 In the instruction to the jury, the trial court charged that if the jury found that the specified property was stolen and

"* * * that this defendant soon thereafter was in possession of that property, whether that possession was alone or whether it was jointly with others who are named in the indictment, then that possession is prima facie evidence of the commission of the larceny and of the burglary. That is to say that the possessor of such stolen property is presumed to be the taker unless he satisfactorily accounts to the jury for the possession which he's got. Now I caution you this is a presumption only and any explanation of how he came into possession which satisfies the jury is sufficient to overcome or to rebut or to negate that presumption."[1]

1. As a caveat, we note that the terms "presumption" of guilt and "inference" of guilt have been used interchangeably in this connection. E. g., State v. White, 4 W.W.Harr. 316, 152 A. 393 (1929). The courts of this State have generally spoken of a "presumption" in this regard. E. g., State v. White, supra; State v. Edell, 7 W.W.Harr. 404, 183 A. 630 (1935); Wiggins v. State, Del., 210 A.2d 314 (1965); Crawley v. State, Del., 219 A.2d 158 (1966). We do not endorse any implication that, in the absence of a satisfactory explanation of possession, a conviction is mandatory. The "presumption" of guilt, here under consideration, is a presumption of fact, not a presumption of law; it authorizes

The defendant's position is that the presumption of guilt is impermissible unless the possession of recently stolen property is "personal and exclusive"; that the defendant was not in exclusive possession of the stolen property because two other persons were with him in the automobile in and about which the articles were found; that, therefore, the jury charge in this connection was error. The defendant's argument is unacceptable.

■ The general rule is, as the defendant contends, that in order to permit a presumption of guilt from possession of recently stolen goods, a corpus delicti having been established, it is necessary for the State to prove that the possession was "exclusive". 13 Am.Jur.(2d) "Burglary" § 54; 12 C.J.S. Burglary § 59b.

■■ There is however, a corollary to the rule which we adopt: the requirement that possession must be "exclusive", in order to incriminate, does not mean that the possession must necessarily be separate from all others. An "exclusive possession" may be the joint possession of two or more acting in concert. Where the only persons having control of, or access to, the stolen property are the defendant and his co-conspirators, joint possession of the stolen property may incriminate the defendant as well as his confederates. Before the corollary is applicable, however, there must be substantial evidence of the defendant's complicity in the offense, apart from the possession itself; there must be substantial proof that the defendant acted in concert with others in joint possession before the presumption of guilt may arise from the joint possession. State v. Watson, Mo., 350 S.W.2d 763 (1961); Guarino v. State, Fla.App., 133 So.2d 596 (1961); Cowart v. State, 92 Ga.App. 253, 88 S.E.2d 208 (1955); Annotation 12 L.R.A.,N.S., 199, 217.

but does not require a conviction; it is sufficient to sustain a finding of guilt but it does not contravene the presumption of innocence as a matter of law.

■ Applying the rule and its corollary in the case before us, it is clear from the above statement of the State's case that there was substantial evidence of Flamer's complicity in the burglaries. That Flamer acted in concert with the others, and with a common purpose to commit the burglaries, is evidenced by the facts that the automobile was in his custody and control; that all three men were seen together shortly before the burglaries; that, shortly after the burglaries, Flamer was driving the automobile containing the stolen goods and the other offenders; that he attempted to escape the police; that, of the three, only Flamer had a cut which could be related to the blood on the door of the Dill house. Such evidence of complicity is adequate, in our opinion to warrant a charge on the presumption of guilt based upon joint possession.

■ Inaccuracy exists in that portion of the jury instruction which refers to joint possession "with others who are named in the indictment." Obviously, this instruction was based upon State v. Wright, 6 Penn. 251, 66 A. 364 (1907). As has been noted, however, evidence of complicity—not averment in the indictment—is prerequisite to warrant the presumption on the basis of joint possession. The error was harmless, in our judgment, in the light of the whole jury charge and in view of the abundant evidence of Flamer's complicity.

The defendant relies upon State v. Watson, supra, and People v. Urban, 381 Ill. 64, 44 N.E.2d 885 (1942). The *Watson* case supports the rule we here adopt; but there, contrary to the case before us, the State did not contend that there was any "proof of a conspiracy or a common purpose to commit the burglary" as to the defendant, who was convicted solely upon the basis of his presence as a hitch-hiker in an automobile in which recently stolen goods were found.

See 1 Wharton's Criminal Evidence, § 191; 12 L.R.A.,N.S., 199, 200–214; 13 Am.Jur. (2d) "Burglary" § 54.

The *Urban* case, involving burglary tools found in a locked box to which several persons had keys, obviously is distinguishable on its facts.

We conclude on this point that the evidence was sufficient to make applicable the presumption arising from possession of recently stolen goods. The defendant's misfortune was that the jury rejected his attempted explanation of that possession.

## II.

The defendant argues that there was error in that the jury instruction permitted a conviction of burglary upon the basis of possession of stolen goods without a prerequisite finding of breaking and entering as the corpus delicti.

The jury instruction contained a definition of the crime of burglary in the third degree. In explaining the presumption of guilt arising from the unexplained possession of recently stolen goods, the jury was told that it must first find that the goods were stolen during a breaking and entering with intent to commit larceny. In summation, the trial court instructed the jury that, for a guilty verdict, it must be satisfied that the defendant broke and entered the Rhoads and Dill houses with intent to commit larceny.

Viewing the entire jury charge, we are satisfied that this assertion of error is without merit.

## III.

The defendant contends that there was error in the trial court's failure to instruct the jury, in their deliberations on the Rhoads and Dill burglaries, to disregard the evidence regarding the Beck charges which were dismissed at the end of the trial.

In entering judgment of acquittal on the Beck charges for insufficient evidence, and in withdrawing those charges from further consideration by the jury, the trial court told the jury it was making no comment as to the sufficiency of the evidence on the remaining charges; that, as to the Beck charges "you are not concerned with either of those charges, and you are not to consider them in your deliberations."

The defendant consented to the consolidation of the Beck charges with the others for trial. Therefore, the defendant lacks standing to object to the Beck evidence as prejudicial. Draper v. State, 1 Storey 390, 146 A.2d 796 (1958). Moreover, the defendant neither objected to the instruction, nor requested a different one, and seeks to raise this point for the first time on appeal. This is impermissible. Superior Court Criminal Rule 30, Del.C. Ann.;[2] Webster v. State, Del., 213 A.2d 298 (1965).

## IV.

Finally, the defendant asserts that the evidence is insufficient to show that a breaking and entering occurred at the Rhoads and Dill houses. This contention is built upon the grounds that there was no unequivocal evidence that each door and window was closed and locked, and that the offenders may not have been obliged to break in order to enter the premises.

This contention is without merit. We are satisfied that there was ample evidence inconsistent with any rational conclusion other than that of breaking and entering.

We conclude that there was no error in the jury charge nor insufficiency in the evidence as asserted by the defendant. Accordingly, the judgment of conviction is affirmed.

2. Rule 30 provides in part:
 "* * * Except with special permission of the court, no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before or at a time set by the court immediately after the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *."