THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VÍCTOR PAGÁN MEDINA, Defendant and Appellant.

No. CR-70-37.      Decided March 15, 1971.

*Enrique Miranda Merced, Elizabeth Armstrong Watlington* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Bienvenido Vélez Coello, Assistant Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is a case of burglary in the first degree committed on February 18, 1967, by stealing an automobile. After the vicissitudes which seem inherent to the judicial proceeding, the transcript of the evidence, five extensions of thirty days each requested by the defense, and the presentation of the briefs by the parties—the Solicitor General presented his brief timely—we have to decide it now.[1]

---

[1] In the fiscal year in which this burglary was committed (1966–67), 18,621 burglaries—one every 28 minutes—were committed in Puerto Rico, and 5,486 automobiles—one every 96 minutes—were stolen. These figures, up to date, are the following: In the year 1969–70 burglaries in Puerto Rico amounted to 20,732—one every 25 minutes—and automobile thefts to

Appellant was accused and convicted of burglary in the first degree committed in the night of February 18, 1967, in Vistamar Development, in Carolina, Puerto Rico. The burglary consisted in entering that night the carport of a house whose gate was closed and locked, and in stealing a motor vehicle kept therein, property of the resident of said house.

He assigns three errors, which we shall mention and discuss hereinafter. The first error consists in that, in his opinion, the carport in question was not susceptible of being burglarized. We do not agree. The carport has a roof, an iron gate, which was locked, one of its walls is in common with the rest of the residence, the other wall, up to the top, is made of ornamental blocks, and on the rear part there is a fence. The house is surrounded by a fence.

Section 408 of the Penal Code, 33 L.P.R.A. § 1591, provides that:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, barn, stable, outhouse, or other building, tent, vessel or car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary."

The following section of the same legal body provides that burglary in the first degree is the one committed in the nighttime, and burglary in the second degree, the one committed in the daytime.

The burglarized carport is part of the residence to which it is physically attached. The illegal entering thereinto, breaking the lock and for the purpose of stealing or of committing any felony, constitutes burglary. If it is committed

6,296—one every 60 minutes. *Datos Estadísticos, Publicación de la Policía de Puerto Rico*, p. R-3, 1969–70. For a discussion on the crime incidence in Puerto Rico, see Rigau, *Tasa de Criminalidad Comparada*, 28 *Rev. C. Abo. P.R.* 269 (1968). See, also, Burger, *Crime and Criminal Law Today*, 28 *Rev. C. Abo. P.R.* 157 (1967), and the report *The Challenge of Crime in a Free Society* of the President's Commission on Law Enforcement and Administration of Justice (1967).

during the nighttime, it constitutes burglary in the first degree.

It is generally known that in the Puerto Rican homes we live part of the time in the carports because of our warm weather. There, the children play, the adults sit to chat, and in the nighttime property is kept therein—furniture or vehicles.

We have already stated in *People* v. *Cosme Vargas*, 96 P.R.R. 815 (1969), that in the interpretation of said § 408 of the Penal Code, the formalistic juridic views have been overridden because they are unreal and inoperative. The contemporaneous adjudication is not based on archaic and dogmatic preconceptions, but rather that, in order to give life and efficacy to the law, the courts resort to realistic jurisprudential approaches. That is the manner to impart to adjudication the elements of rationality and reasonability which are indispensable for the correct formulation of every juridic principle. Pound, *Law Finding Through Experience and Reason* 45 *et seq.* (1960). As Castán has said:

"A jurist, in order to be a true jurist, and not an abstract reasoner, a logical formalist, cannot separate his science from the Law, neither from the sociological investigation of the Law really effective and alive, nor from the philosophical investigation of the spirit and of the principles of the Law."[2]

Even under the common law, since a century ago it is considered that burglary is committed not only by penetrating a dwelling, but also the outbuildings near the latter, within its lot or yard. These outbuildings traditionally, included stables, barns, and more recently, garages. Perkins, *Criminal Law* 160 (1957). Undoubtedly, this includes today the carports, whether or not the latter are physically contiguous to the dwelling of which they are a part. As it is well stated by Clark and Marshall, with the temporary wide compass of

---

[2] *Teoría de la Aplicación e Investigación del Derecho* 36 (1947).

protection to persons and property, burglary, viewed only as an offense against habitation, is an anachronism. A Treatise on the Law of Crimes 870, 6th rev. ed. (1958). See, also, *Burglary: Outbuildings or the like as part of dwelling house*, 43 A.L.R.2d 831 and 2 Wharton's Criminal Law and Procedure, §§ 424 and 429. It is understood to be so. As well as the common law did not require that horses, to be protected by law, should be kept at night inside the owner's house, but it was enough that they be kept in the stable, nowadays it is not required that the automobile be kept in the living room; it suffices that it be kept in the carport. The first error assigned was not committed.

In his second assignment appellant argues that by reason that the evidence did not establish an "exclusive possession" on his part, of the stolen vehicle, we must reverse. In order to discuss this error we must consider the pertinent part of the facts.

In the early hours of February 18, 1967, policeman Rafael Pérez was making the rounds in Campo Rico Avenue, in Carolina, accompanied by another policeman. He noticed that a vehicle was coming, which he considered suspicious, because it was carelessly driven, and he ordered it to stop. Two men were traveling in said vehicle. The latter, instead of stopping, tried to escape, and when they made a U-turn in order to escape, the motor stalled and the car stopped. The policeman saw appellant in the vehicle. The latter and the other person traveling in the car, when the motor stalled, alighted from the car and ran away. Policeman Pérez arrested one of them, but appellant escaped. Two hours later the police had already arrested him. The policeman testified that he saw appellant in the vehicle when he ordered him to stop and saw him when he ran away. When the corresponding investigation was made the vehicle appeared reported to the police as stolen from the carport of its owner's house.

■ Appellant and the other fellow who accompanied him had the joint possession of the stolen vehicle. Does this mean that said circumstance by itself necessarily exonerates him? No. Although, generally, in inferring the presumption of guilt as a result of the possession, by a person, of articles recently stolen said possession is exclusive; however, said usual circumstance—because it is generally common in most cases—is not a mandatory rule. It is not, because, since some times larcenies and burglaries are committed by two or more persons acting in mutual agreement, it is acknowledged that the same inference of guilt may be made when the recently stolen property is in the possession of two or more persons. A leading and quite similar case to the one at bar is the case of *Flamer* v. *State*, 227 A.2d 123 (1967). In said case three men were traveling in an automobile. The police chased the car and finally overtook it. Stolen goods were seized in the car. Two of the three defendants entered guilty pleas, but Flamer did not. The latter impeached the proposition in the sense that the joint possession of the stolen goods warranted the inference of their guilt. There, the court stated the following at p. 127:

"The requirement that possession must be 'exclusive', in order to incriminate, does not mean that the possession must necessarily be separate from all others. An 'exclusive possession' may be the joint possession of two or more acting in concert."[3]

In other words, "exclusive possession" does not necessarily mean exclusive of *one* person, but rather exclusive *of those* who have acted jointly. If it were contrariwise, that is, that the stolen goods must be in the "exclusive" possession of only one person so that the inference of guilt may be made, it could occur that if a man steals a bag of dollar bills from a bank and he is arrested with the product of his theft, that could warrant the inference of guilt, but if two or three men steal

---

[3] *"Una 'posesión exclusiva' puede ser posesión conjunta entre dos o más personas que hayan actuado o estén actuando de acuerdo."*

ten bags of dollar bills and they are arrested, then the inference of guilt could not be made because the possession was not "exclusive" of one person. Naturally, it is not so. Words are not nails to stick into the timber striking them with a sledge, but rather they are oral sounds or written symbols of ideas. They cannot, then, be utilized mechanistically, but by exercising reasoning.[4]

From the foregoing, it clearly appears that the fact that the possession in this case consisted of the possession between appellant and the other person who fled away, is no reason to acquit him.

In *People* v. *Bonilla*, 78 P.R.R. 144, 153 (1955), following *Holland* v. *United States*, 348 U.S. 121, a case recently cited in *In Re Winship*, 397 U.S. 358, 362 (1970), we said:

". . . Hereafter in weighing the evidence in a criminal case— and in instructing a jury on the question—trial judges are not to use the test that in order to justify conviction circumstantial evidence must be inconsistent with any other reasonable hypothesis of innocence. On the contrary, as pointed out in the *Holland* case, the problem is if the evidence—whether it be circumstantial or testimonial—establishes the defendant's guilt beyond a reasonable doubt."

See, also, in the same sense *People* v. *Pérez Escobar*, 91 P.R.R. 9, 13 (1964) ; *Surrett* v. *United States*, 421 F.2d 403 (1970) ; *United States* v. *Nelson*, 419 F.2d 1237 (1969) ; *United States* v. *Lodwick*, 410 F.2d 1202 (1969).

■   As it is well known, when recently stolen goods are found in the possession of a person who refuses to give any account of such possession, or who gives a false account

---

[4] In order to avoid those errors, it is convenient to read works like the following: Pound, Law Finding Through Experience and Reason; Castán, *Teoría de la Aplicación e Investigación del Derecho;* Cardozo, The Nature of the Judicial Process; Castán, *La Formulación Judicial del Derecho;* Friedmann, Law in a Changing Society; Paton, Jurisprudence; Llewellyn, The Bramble Bush; Pound, The Spirit of the Common Law.

thereof, it may be inferred that he stole them. 2 Wharton's Criminal Law and Procedure 32, § 411.

■ The policeman having seen appellant in the stolen vehicle at dawn the night on which said car was stolen, and appellant having escaped when the policeman ordered him to stop, are circumstances of unexplained illegal possession of recently stolen property, and of appellant's incriminating conduct which justify the weighing of the evidence made by the trier of the facts. See *People* v. *Juarbe*, 83 P.R.R. 719 (1961) and *People* v. *Rodríguez*, 91 P.R.R. 150 (1964). The second error assigned was not committed.

■■ As third error appellant assigns that the element of intent had already been litigated and it was res judicata because he had been prosecuted for larceny of use in Carolina, and he had been acquitted. Aside from the fact that the offenses of burglary and larceny of use are two distinct offenses and the conviction or acquittal for one of them does not necessarily entail the acquittal or conviction for the other, appellant did not comply with Rules 63 and 64 (f) of the Rules of Criminal Procedure. The first rule provides that any matter of defense or objection which is capable of determination before trial of the general issue may be raised by motion filed before or when the plea of not guilty is made. The aforementioned second rule provides that the motion to dismiss the information or any count thereof, on the ground of res judicata, shall state the name of the court, the title of the case, and the date and place of the alleged judgment previously entered. Appellant did not place the trial court in a position to determine whether actually the controversy had been previously litigated. *People* v. *Burgos*, 17 P.R.R. 1112 (1911); *People* v. *Gillies & Woodward*, 20 P.R.R. 467 (1914); *People* v. *Rivera*, 23 P.R.R. 349 (1916); *People* v. *López de Victoria*, 77 P.R.R. 904 (1955); *People* v. *Pacheco*, 78 P.R.R. 23 (1955).

At the close of the trial the defense waived the term for pronouncing sentence and stated that it did not request a suspended sentence because appellant was serving a sentence for mayhem. Tr. Ev. 23.

The errors assigned not having been committed, the judgment rendered in this case will be affirmed.

Mr. Acting Chief Justice Pérez Pimentel dissented in a separate opinion.

—O—

Dissenting vote of MR. ACTING CHIEF JUSTICE PÉREZ PIMENTEL.

San Juan, Puerto Rico, March 15, 1971

As I did in the case of *People* v. *Cosme Vargas*, 96 P.R.R. 815 (1969), I dissent from that part of the opinion which holds that a carport, like the one described therein, is one of the structures protected by the burglary statute (§ 408 of the Penal Code). The grounds for this dissent may be found in the Motion for Reconsideration filed by appellant in the aforesaid case of Cosme Vargas, and to which I refer. I concur with the contention of law made therein.