## MICHAEL ANTHONY DAVIS *v.* STATE OF MARYLAND

[No. 158, September Term, 1972.]

*Decided December 5, 1972.*

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Alan I. Baron,* with whom was *Emily L. Rody* on the brief, for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Michael Libowitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Michael Anthony Davis was convicted of storehouse breaking with intent to steal goods of the value of $100.00 and upwards by Judge Dorf presiding in the Criminal Court of Baltimore without the aid of a jury. He was sentenced to a term of two years.

His appeal to this Court raises the following questions:

1. Was the identification evidence sufficient to link appellant to stolen goods?
2. Did the trial judge err by applying a presumption of law rather than an inference of fact in connection with the supposed possession of stolen goods?
3. Whether there was such possession of stolen goods by the accused as to justify an inference of guilt.

The questions are intertwined and will be considered together.

There was evidence from which the following facts could be found: A grocery store was broken into at about 2 A.M. by the removal of an iron gate, and the breaking of the glass in the front door. A carton of cigarettes of the value of $85.00, plus $60.00 in cash were taken from the premises. Sergeant [then Officer] Voss in a cruising vehicle received radio warning of a breaking and entering in progress at 538 N. Arlington Avenue, by two negro males, 16 to 18 years of age, thin build. One was described as wearing a gold shirt, with a small bush haircut; carry-

ing a case of cigarettes and seen running west on Edmondson Avenue. Within minutes Sergeant Voss saw the defendant, who fitted the broadcast description, emerging from a vacant house at 613 N. Carrollton Avenue. The officer stopped, opened the vestibule door and saw a case of cigarettes in the vestibule. The door leading from the vestibule into the house itself was locked and boarded shut, the house vacant. The cigarettes (in fact those stolen minutes before) were placed in the police vehicle and the defendant was followed and arrested in the 500 block of Carrollton Avenue, a short block from the scene of the breaking and entering. The officer never lost sight of the defendant after initial observation. He saw a person in a crowd that had gathered slip the defendant a jacket to cover his gold shirt, although the night was "real hot." No one else in the group was wearing a gold shirt. The defendant denied participation in the breaking and entering; denied being in the vestibule of the vacant house; admitted receiving a jacket from a friend but said it was because "the boy saw I had the chills and said 'Man, you put on my jacket.'" Defendant also testified that burns upon his hand had required "skin grafts" about July 4 that prevented him from lifting heavy weights or touching objects with his fingers. The breaking and entering took place on August 18, 1971. There were no bandages remaining on his hands.

At the conclusion of the case on December 16, 1971, the trial judge stated:

> "I think the state has met the burden of proof beyond a reasonable doubt and to a moral certainty."

On December 23, 1971, when denying motion for a new trial, he added:

> "* * * I've gone over the testimony and my notes. I agree with you that the case strictly comes down to a question of credibility of one witness as opposed to another. I don't think

there is any doubt in anyone's mind that the place was broken into. * * * We have * * * Sergeant Voss and we have the defendant, Mr. Davis. Their testimony is exactly opposite * * *. Mr. Davis has specifically said he did not come out of the vacant house * * *. Sergeant Voss says * * * he saw the subject leave the vacant house and * * * that he never lost sight of the subject from the time he left the vacant building until the time he arrested him. * * * as far as the credibility is concerned, * * * I would believe Sergeant Voss in this case. Therefore, if, in fact, I do believe Sergeant Voss, it comes down to the question whether or not, based on his testimony, if it is enough to convict beyond a reasonable doubt and a moral certainty. * * * He saw one of the subjects leaving a vacant house * * * that subject fitted the description. * * * He stopped his car, opened the front door of a vacant house and there he saw the case of cigarettes, which was later identified as the cigarettes that had been taken in this burglary. Based on this, we have the defendant who is observed at or near the place of the breaking; at almost the identical time the breaking and entering took place; within the proper radius; within the right space of time * * *. We also have a man at that time coming out of a vacant house in which the officer found the material that was, in fact, stolen. * * * I think the fact is that he had more than just an inference that he was in possession of the stolen goods. The testimony shows that he, in fact, probably placed the goods there at that time, or he was at the same location where the goods were, is enough to show that he was in possession at one time of these goods."

At that point in his summation of facts, the trial

judge used the word "presumption" in connection with the possession of the stolen cigarettes.

Appellant urges that the connection between the stolen goods and the defendant does not constitute "possession" such as would give rise to any inference of guilt. We do not agree.

The vacant house; the boarded and locked condition of the inner door of the house; the emergence of the accused from outer door; the discovery within the vestibule of the stolen goods within minutes of the theft; the rejected claim of the accused that he had never been within the vestibule; his admitted coverage of his "gold shirt" by a garment loaned by another—combine to permit the trier of fact to conclude that the accused was in fact in possession of the stolen goods.

In *Graham v. State,* 6 Md. App. 458, it was said at page 463:

> "The law is clear that the recent, exclusive possession of stolen goods creates an inference of fact that the possessor was the thief or the burglar * * *."

Credibility of the witnesses is a matter for the trier of facts. *Polisher v. State,* 11 Md. App. 555, 592.

Appellant argues, however, that use by the trial judge of the word "presumption" in his comments when overruling a motion for a new trial demonstrates that there was reversible error. It is urged that Judge Dorf wrongly applied a presumption of law, (*requiring* application of a rule of law) rather than an inference of fact (*permitting,* but not compelling the conclusion of guilt.)

It is true that in *Boswell v. State,* 5 Md. App. 571, we said at page 578:

> "The inference to be drawn from possession of recently stolen goods is one of fact and it does not in any case raise a presumption of law of the possessor's guilt."

This is a correct statement of the law.

However, the Court's statements demonstrate beyond question that the accused was found guilty because the trial judge drew an inference of guilt from the fact of possession of recently stolen goods. The mere use of the word "presumption" by the trial judge does not alter in any way his finding that the *facts* established the guilt of the accused beyond a reasonable doubt and to a moral certainty.

That the words "presumption" and "inference" in this area frequently are used interchangeably in judicial discussion is demonstrated both in case law and in text.

*Wigmore on Evidence*, Volume IX, 3d Ed., § 2491, at page 288, says:

> "The employment here of the term 'presumption' is due simply to historical usage, by which 'presumption' was originally a term equivalent, in one sense, to 'inference'; and the distinction between presumptions of fact and of law was a mere borrowing of misapplied Continental terms."

So, too, in *Wharton's Criminal Evidence*, Volume 1, 12th Ed. (Chapter 4, intriguingly headed "Presumptions and Inferences") one reads:

> "§ 135. *Possession of stolen property.*
> If the defendant is in possession of recently stolen property, an inference of fact, sometimes called a rebuttable presumption of fact, arises that he has stolen the property."

In *Flamer v. State*, 227 A. 2d 123 [S. Ct. Del.], wherein use by a trial judge of the word "presumption" in his charge to a jury relating to possession of stolen goods was held not to be error, it was said in footnote 1 (p. 126):

> "As a caveat, we note that the terms 'presump-

tion' of guilt and 'inference' of guilt have been used interchangeably in this connection."

Indeed, the interchangeable use of the two words is demonstrated by the language of this very Court. See *Scott v. State,* 2 Md. App. 705, 708.

We are persuaded that the record in this case demonstrates that the trial judge used the word "presumption" as synonymous with "inference" and that he did not apply a presumption of law to reach his conclusion that the accused was guilty beyond a reasonable doubt and to a moral certainty.

Since it appears that the judgment of the trial court was not clearly erroneous, we will affirm.

*Judgment affirmed.*