IN THE SUPREME COURT OF THE STATE OF DELAWARE

JAYVON STEVENSON, §
§ No. 514, 2016
    Defendant Below, §
    Appellant, § Court Below—Superior Court
§ of the State of Delaware
    v. §
§
STATE OF DELAWARE, § Cr. ID No. 1603010349A
§
    Plaintiff Below, §
    Appellee. §

Submitted: December 6, 2017
Decided: March 1, 2018

Before **STRINE**, Chief Justice; **SEITZ**, and **TRAYNOR**, Justices.

# **O R D E R**

This 1st day of March 2018, having considered the parties briefs and the record below, it appears to the Court that:

(1)    After the police seized two loaded firearms from a car in which Jayvon Stevenson was a passenger, Stevenson was charged with an eventually indicted on two counts of Possession of a Firearm by a Person Prohibited and two counts of Possession of Ammunition by a Person Prohibited. A Superior Court jury found Stevenson guilty of all counts, and he was sentenced to thirty-one years imprisonment at Level V, suspended after ten years, followed by decreasing levels of supervision.

(2) After Stevenson filed a timely notice of appeal, his counsel filed a non-merit brief and a motion to withdraw under Supreme Court Rule 26(c). Although we granted that motion, we concluded that Stevenson's appeal was not wholly without merit and appointed appellate counsel.

(3) The events leading to the seizure of the firearms and Stevenson's arrest began during the early-evening hours of March 12, 2016 when La'Shonda Brown entrusted her automobile to Anthony Wilson. Hours later, Brown received a phone call notifying her that "two guys" were driving her vehicle and "doing some crazy stuff."[1] Concerned, Brown sent her brother, Roland Comer, to retrieve the vehicle. Comer eventually found both the vehicle—parked on 3rd Street in the City of Wilmington—and Wilson, who was standing nearby with Stevenson. After Comer agreed to drop Wilson and Stevenson off at another location, all three got in the vehicle. Comer drove, Wilson sat in the front-passenger seat, and Stevenson sat in the rear, behind the driver.

(4) Minutes later, Wilmington police observed Comer veer on to the side of the road and stop without utilizing a turn signal and that Wilson was not wearing a seat belt. The police therefore stopped the car and arrested Wilson and Stevenson, both probationers, for violating curfew. Upon shining a flashlight into the area

---

[1] App. to Appellant's Non-Merit Br. under Supr. Ct. R. 26(c) at A15 [hereinafter "App. to Non-Merit Br."].

2

where Stevenson sat, an officer glimpsed the "silver slide of a handgun" situated beneath the driver's seat, where Stevenson's "toes would probably be tucked."[2] A semi-automatic handgun loaded with six rounds and bearing an obliterated serial number was subsequently recovered from that location. A search of the vehicle ensued, yielding the recovery of another firearm—a loaded Smith & Wesson revolver—from the vehicle's center console. The police took Comer, Wilson, and Stevenson into custody. Later that evening, the police collected DNA samples from the three individuals, and the firearms were swabbed for DNA.

(5) Both Brown and Comer testified at trial. Each denied having prior knowledge of the firearms. Numerous officers testified, including the arresting officer, who stated that Stevenson could have reached the loaded revolver found in the console from where he was sitting in the vehicle.

(6) The prosecution presented DNA evidence without objection by Stevenson. There was no DNA evidence linking Stevenson to the gun that was found at his feet under the driver's seat, but he was identified as a "potential DNA contributor"[3] to a DNA sample found on the Smith & Wesson revolver's hammer. That sample was "consistent with being a mixture of at least two individuals."[4] Wilson was also identified as a potential contributor to the hammer sample. Notably,

---

[2] App. to Non-Merit Br. at A26.
[3] App. to Appellant's Opening Br. A16 [hereinafter "App. to Opening Br."]. *See id*. at A43.
[4] *Id.*

a DNA single-source profile found on the Smith & Wesson cylinder release was "consistent with [Wilson's] known DNA profile,"[5] and, prior to Stevenson's trial, Wilson pleaded guilty to possessing the Smith & Wesson revolver.

(7) Stevenson raises two claims on appeal. First, he asserts that his trial counsel provided ineffective assistance by failing to move for a judgment of acquittal. Ineffective-assistance-of-counsel claims receive *de novo* review.[6] Second, Stevenson argues that the Superior Court committed plain error by not entering a judgment of acquittal notwithstanding the absence of a motion seeking that relief. This claim requires us to, among other things, assess the sufficiency of the evidence at trial. We generally review sufficiency-of-the-evidence claims *de novo* in order to determine whether, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7] Where a defendant fails to move for a judgment of acquittal, however, we review sufficiency-of-the-evidence claims for plain error.[8] "Under the plain-error standard of review, the error complained of must clearly prejudice substantial rights to such a degree as to jeopardize the fairness

---

[5] *Id.*; State's Ex. 26.
[6] *See Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010).
[7] *Williams v. State*, 539 A.2d 164, 168 (Del. 1988) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).
[8] *Swan v. State*, 820 A.2d 342, 358 (Del. 2003) (citing *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).

and integrity of the trial process."[9]  We limit plain-error review to material defects apparent on the face of the record, defects "basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[10]

(8)     Although Stevenson acknowledges that this Court generally does not entertain ineffective-assistance-of-counsel claims on direct appeal, he points to the exception to this rule articulated in *Dobson v. State*.[11]  In *Dobson*, the performance of counsel was so "plainly insufficient"[12] and caused such obvious prejudice that the Court considered the claims of ineffective assistance *sua sponte*.  Such is not the case here.

(9)     Claims of ineffectiveness are best pursued through a motion for post-conviction relief under Superior Court Criminal Rule 61.  In proceedings under Rule 61, the Superior Court has an opportunity to develop a factual record, typically through the submission of affidavits.  In this appeal, such a record is lacking, and because Stevenson did not raise his ineffective–assistance-of-counsel claim in the Superior Court, we will not consider the claim on direct appeal.  This holding,

---

[9] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[10] *Id.*
[11] 80 A.3d 959, 2013 WL 5918409 (Del. 2013) (unpublished table decision).
[12] *Id.* at *2.  Dobson's counsel's pretrial preparation was so lacking that he "proceeded to trial with inadequate knowledge of the case to be tried," and, at trial, failed to object to testimony about uncharged crimes and did not seek a limiting instruction which would explain the purpose of doing so. *Id.* at *2-3.

however, is without prejudice to a timely filed Rule 61 motion for postconviction relief, in which this claim may be raised.

(10) Stevenson also contends that the evidence presented to the jury "does not amount to sufficient evidence of Mr. Stevenson's guilt and the [Superior Court], therefore, committed plain error by not *sua sponte* entering a judgment of acquittal."[13] Stevenson does not dispute that he qualifies as a person prohibited under 11 *Del. C.* § 1448(a).[14] Rather, Stevenson claims that the State did not introduce sufficient evidence that he possessed either of the firearms found in the vehicle.

(11) In the context of a person-prohibited charge, possession may be actual or constructive.[15] In order to prove constructive possession, the State must show that, as to each item, the defendant: knew of the location of the item, had the ability to exercise dominion and control over it, and intended to exercise dominion and control over it.[16] Possession of an object "may be the joint possession of two or more [persons] acting in concert."[17]

(12) La'Shonda Brown testified that she did not own or leave guns in her car when she loaned it to Wilson. When Comer was sent to retrieve the car on Brown's

---

[13] Appellant's Opening Br. at 28.
[14] *Id.* at 6.
[15] *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).
[16] *Id.*
[17] *Id.* at 423 (quoting *Flamer v. State*, 227 A.2d 123, 127 (Del. 1967)).

6

behalf, he found only Brown and Stevenson near the car. Two firearms and the ammunition were found in close proximity to Stevenson within the car when the car was pulled over. One of the firearms was discovered at Stevenson's feet—visible from where he sat—and the other was easily within his reach. And although Comer was also in the car, he testified that the weapons did not belong to him, that he did not put them in the car, and, in fact, had not seen them before they were seized. And expert forensic testimony established Stevenson as a potential contributor to the DNA that was found on the revolver that was seized from the console.

(13) Against this evidentiary backdrop, Stevenson chose not to move for judgment of acquittal in the Superior Court, but claims that the Superior Court should have entered judgment in his favor on its own initiative. Our review of the evidence admitted at trial in the light most favorable to the prosecution leads us to conclude that a rational jury could find the essential elements of each of the crimes charged beyond a reasonable doubt. Therefore, we cannot fault the Superior Court for failing to take this case from the jury much less find plain error.

NOW, THEREFORE, IT IS ORDERED that the Superior Court's judgment is AFFIRMED.

BY THE COURT:

/s/ Gary F. Traynor
Justice

7